REMBERT v. EDMONDSON.

(*Jackson.* April 26, 1897.)

STATUTE OF LIMITATIONS. *Privity of successive possessors.*

A parol bargain and sale of the possession of premises, held by actual adverse possession, followed by delivery thereof, will give rise to such privity of possession between such successive occupants as will permit the last one to tack the possession of his predecessor to his, so as to make a continuous adverse possession for the time required by the statute to confer a possessory right or perfect the title.

Cases cited and approved: Marr v. Gilliam, 1 Cold., 491; Erck v. Church, 87 Tenn., 575.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. JNO. L. T. SNEED, Ch.

E. LEVY for Rembert.

JNO. P. EDMONDSON for Edmondson.

McALISTER, J. This is an action of ejectment to recover possession of a small strip of land fronting six feet on Talbot Street, in the city of Memphis, and running back fifty feet. The Chancellor decreed in favor of the defendant, Edmondson. Complainant appealed, and has assigned errors.

The strip in controversy was part of a lot, 75 by 100 feet, bought in 1859 by Mrs. Rembert, the ancestor of complainants. Mrs. Rembert subdivided her lot, and, on the fifth of February, 1866, sold and conveyed to Mrs. Julia Heppeck 50 by 94 feet, thus leaving 6 feet by 50 feet in the rear of the lot, which Mrs. Rembert designated as an alley. Shortly thereafter, Mrs. Rembert sold the remaining twenty-five feet of her original purchase to Julia Mason, describing this lot as fronting twenty-five feet and running back one hundred feet. On the seventeenth of January, 1891, Julia Mason sold and conveyed her twenty-five feet purchased from Mrs. Rembert to Julia Heppeck, and in her deed this clause appears, to wit: "With the right to an alley six feet wide to Talbot Street, along the west line of Julia Heppeck's lot."

It will thus be seen that Mrs. Heppeck had acquired and held possession of the entire lot owned by Mrs. Rembert, ancestor of complainants, prior to 1866, including the 6 feet by 50 feet designated and known as an alley. Mrs. Heppeck died in 1887, leaving brothers and sisters as her heirs at law. On April 20, 1881, and March 30, 1883, these brothers and sisters joined in deeds conveying their interests to one Sarah Levy, who was also a sister of Mrs. Heppeck. These deeds were warranty deeds, and conveyed title to 75 by 100 feet, which included the strip in controversy. In these deeds no mention was made of this strip as an

alley, and the record shows that prior to this time the use of the strip as an alley had been abandoned, and was under inclosure.

It further appears that in March, 1887, Mrs. Levy sold and conveyed to Mrs. John P. Edmondson the lot on the corner of Main and Talbot Streets, but described it as fronting fifty feet on Main Street and running back ninety-four feet. It appears from the record that this trade was negotiated by David Gensberger, brother of Mrs. Levy, and by James F. Graham, who represented his sister, Mrs. Edmondson, at that time Miss Graham. It appears that at the time of this trade the strip of six feet in controversy was the subject of negotiation between the respective agents of the owners. In this interview Gensberger represented that his sister, Mrs. Gensberger, had title to 50 by 94 feet, but that one hundred feet were within the inclosure; that his sister had no title to the six feet, but had the use of it, and had had it inclosed for a number of years; and that while Mrs. Levy would not make a title to the six feet, that whatever interest she had in the six feet by right of possession went with the property. At the time Miss Graham purchased, the strip in controversy was under inclosure with the lot, and when Miss Graham was put in possession of the lot 50 by 94 feet, she was also put in possession of the strip 6 by 50 feet. It will thus be seen that Miss Graham acquired no title by the deed to the six feet in controversy. As already stated,

15 P—2

it was not embraced in the deed, although it was inside of the inclosure.

It further appears that at the date of the filing of this bill Miss Graham had not been in possession of the strip for seven years, so as to acquire a possessory right under the second section of the Act of 1819. If, however, she is permitted to connect her possession with that of her vendor, Mrs. Sarah Levy, her possessory right is fully made out.

In the case of *Marr* v. *Gilliam*, 1 Cold., 491, this Court held, viz.: "Separate successive disseizins do not aid one another where several persons successively enter on land as disseizors, without any conveyance from one to another, or any privity of estate between them other than that derived from the mere possession of the estate. Their several consecutive possessions cannot be tacked on so as to make a continuity of disseizins of sufficient length of time to bar the true owners of their right. of entry."

In the later case of *Erck* v. *Church*, 87 Tenn., 575, this Court, in a very able opinion by Judge Dickinson, reaffirmed the rule, and held, viz.: "There must be a privity of estate connecting the successive possessions, and a transfer of the possessory right, by grant, inheritance, devise or contract, verbal or written." The Court approves the rule on this subject laid down in Wait's Actions and Defenses, viz.: "Where there are several successive adverse occupants of real property, the last one may tack the

possession of his predecessor to his so as to make a continuous adverse possession for the time required by the statute, provided there is a privity of possession between such occupants, and in case of an actual adverse possession, such privity arises from a parol bargain and sale of the possession of the premises, followed by delivery thereof, as well as by a formal conveyance from one occupant to another.''

We think these principles are conclusive of this case. The verbal contract between Mr. Gensberger, the agent of Mrs. Levy, and James F. Graham, the agent of Miss Graham, at the time the trade for the lot was concluded, that whatever possession Mrs. Levy had of the six foot strip should go with the lot, established such a privity of possession, in respect to this strip, between Miss Graham and her vendor, Mrs. Levy, as that their successive possessions may be connected so as to make out the bar of the statute.

The decree of the Chancellor is affirmed.